UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Shawn Green, #97A0801,

                                  Plaintiff,

         -against-                      11 CV 6063

Brian Fischer, Commissioner for Department of Correctional Services ("DOCS"); Lucien J. Leclaire, Jr., Deputy Commissioner; Karen Bellamy, Director, Inmate Grievance Program ("IGP"); John/Jane Doe, Director of Diversity Management; S.E. Racette, Superintendent of Elmira Correctional Facility ("Elmira"); Mark L. Bradt, former Elmira Superintendent; John/Jane Doe, Elmira Administration Deputy; William Hopkins, former Elmira Administration Deputy; Lawrence Friot, Senior Correction Counselor; M. Titus, former Elmira IGP Supervisor; R. Coveny, W. Hughes, Noeth, Captain; Card, R. Semski, Schornsteimer, John Doe, lieutenants; Fanelli, Schmelzle, John Doe, Sergeant; Central Office Review Committee ("CORC") members;

                                  Defendants

[FILED FEB 7 - 2011 MICHAEL J. ROEMER, CLERK WESTERN DISTRICT OF NY]

## I. STATEMENT OF JURISDICTION

1. This is a civil action seeking relief and/or damages to defend and protect the rights guaranteed by the Constitution of the United States. This action is brought pursuant to 42 U.S.C. §1983. The Court has jurisdiction over the action pursuant to 28 U.S.C. §§ 1331, 1343 (3) and (4) and 2201.

## II. PREVIOUS LAWSUITS

2. Plaintiff has filed no other lawsuits dealing with the same facts involved in this action.

## III. PARTIES

3. Plaintiff: Shawn Green, Southport Correctional Facility ("Southport"), P.O. Box 2000, Pine City, New York, 14871.

4. Defendants: Brian Fischer, Lucien Leclaire, John Doe, CORC members, current or last known employment address is: DOCS, 1220 Washington Avenue, Albany, New York, 12226-2050. These defendants are being sued in their individual and/or official capacity.

5. Defendants: William Hopkins is currently employed at Southport, P.O. Box 2000, Pine City, New York, 14871, and M. Titus is currently employed at Livingston Correctional Facility, P.O. Box 49, Sonyea, New York, 14556. These defendants are being sued in their individual capacity.

6. All other Defendants last known or currently are employed at Elmira, 1879 Davis Street, P.O. Box 500, Elmira, New York, 14902, are being sued in their individual and/or official capacity.

## IV. FIRST AMENDMENT VIOLATIONS

7. In October 2008 LeClaire revised Inmate Property limits Directive #4913 that implement new legal matters restricts (III-Exceptions-1)- conceded to by Commissioner Fischer - that effected plaintiff and other litigant prisoners ability of preparing and access to necessary material needs for adequate/efficient presentation of any collateral and/or civil proceedings possibly being formulate by those incarcerated with legal matters standardize limits to the equate one additional draft bag in their cells. Although, there are already State and Departmental provisions enacted to prevent fire safety hazardous. Said provision has resulted in Plaintiff abandonment of promising legal matters and the sending out of crucial materials required for matters involving his criminal imprisonment litigation that will place him over the current in cell property bags limitations. see also, EL-35-354-09.

8. When this unconstitutional legal materials limitation matter was brought to Bradt attention in late January 2009 by means of grievance mechanism appeal process, etc.; he approved of such inappropriate provisions with decision February 6, 2009. Instead of soughting a variance from DOCS Central Office in regards to same protocol, infringement on prisoners civil rights.

### A. SUPERVISORY LIABILITY

9. CORC members who reviewed on March 25, 2009 an appeal of the aforemention unconstitutional first amendment violations asserted within grievance complaints filed thereto, upheld the directive as is. Although, such Committee should have disallowed the policy, it deliberately failed to act and remedy wrong after being informed of constitutional violations that would likely occur.

10. The constitutional basis for these claims under 42 U.S.C. §1983 are First and Fourteenth amendment violation

11. The relief I am seeking for these claims are declaratory/injunctive reliefs, compensatory and punitive damages in the amount of $10,000.00 from each and every Defendant involved in the above.

### B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

12. Did you grieve and/or appeal those claims? Yes

    If your answer is YES, state the results: IGRC Committee Deadlock, Superintendent denied grievance.

13. Did you appeal the decision? Yes

If your answer is YES, state the results; that property, including legal work, is limited in accordance with Directive #4913.

## I. DISCRIMINATION

14. Schmelzle conducted a totally discriminatory investigation into diabetics at Elmira alternative week days one hour recreation that's in conflict with - those eligible on specific days - 3:00 p.m. insulin medication administered on a daily basis at second floor of facility infirmary, which forces eligible diabetics to forfeit either one or the other during that time. However, Schmelzle purposely, instead of impartially inquiring about issue, base matters upon his own theories and beliefs supported by other staff assumations sought by him personally set forth in a report dated March 11, 2008. That were later grounds for a judicial determination, which is the reasons same dilemma still exists at facility. see also, EL 37-054-08.

15. Meanwhile, Hopkins who implemented the open module (one-hour) recreation policy and procedure at Elmira purposely had not included any reasonable accommodations provision therein for diabetics face with such a conflict.

16. Elmira Special Housing Unit ("SHU") deliberately does not issue prisoners admitted to said unit their personal property within the seventy-two hours (72) departmental time frame. Plaintiff's admission to SHU were October 14, 2010 morning, however, his property was inventoried (by Officer A. Curious) October 26, 2010 but not issued to him until October 28, 2010 evening; like countless other prisoners, some whose filed complaints (EL-37-525-10, 37-324-10). Its customary that those prisoners in Elmira SHU property isn't provided in seventy-two hours. Subjecting them to go days of weeks without a change of clothing or various personal affects, which Fonelli and John Doe had been aware of yet condone by not making any efforts to rectify matters. see also, EL-37-679-10.

17. Subsequently, John Doe intentionally implemented a policy that SHU prisoners personal property be inventoried without them present doing such transactions, has created an increasing risk of vandalism and/or thievery for SHU prisoners belongings at Elmira - ever since going into effect- is in total violation as well as contradiction with departmental policy.

## A. SUPERVISORY LIABILITY

18. Bradt became aware of recreation and medication schedules conflict thru grievance appeal mechanism in March 2008 as well as Inmate Liaison Committee May 2008 agenda. However, he allowed a custom involving

-3-

services and privileges prisoners are afforded by laws to continue unresolved with decision rendered April 3, 2008. Said supervisor deliberately failed to act and remedy conflictive policies wrongfully effecting prison population after being informed via several means of such occurrence that has not changed to this date.

19. Likewise, CORC members who reviewed on May 14, 2009 the appeal of said Superintendent, allowed same situation to persist with their intentional failure of administrative (in addition to negative) acts as well as to remedy something as simple as an overlapping schedule dispute with their upholding of Bradt determination.

20. The constitutional basis for these claims under 42 U.S.C.§ 1983 are Eighth and Fourteenth amendment violations.

21. The relief I am seeking for above claims are injunctive relief compensatory and punitive damages in the amount of $10,000.00 from each and every Defendant involved in the above.

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

22. Did you grieve and/or appeal these claims: Yes

    If your answer is YES, state the results: grievance were denied.

23. Did you appeal these decisions: Yes

    If your answer is YES, state the results: appeal was denied.

## VI. CLASS OF ONE (Discrimination)

24. Somski intentional- by unjust means- had plaintiff removed from a recycling program April 6, 2008 shortly after being assigned such March 10, 2008, base upon allegations set forth in a confidential note he'd supposedly received sometime in March 2008, under the cloak of security reasons. Because plaintiff's disciplinary records wouldn't indicate any threaten/abusive behavior toward prisoners nor brief placement in program (or at facility for that matter) could not raise any suspicion of his involvement with any undermined activities related to said program; other than discrimination in a program pre-dominately caucasian and hyperpathetic claims lacking any substance. see also, EL-34-193-08.

25. Thereafter beginning of April 2008 Friot intentionally removed plaintiff from his a.m. recycling program pursuant to improper means not establish in departmental Program Committee protocol. When the bases for his exclusion was an inmates falsified allegations; instead of a request initiated solely by staff members.

26. During a number of disciplinary proceedings held before Schornstheimer plaintiff experience a deliberate abuse of process on his part along with overly severe punishment being purposely imposed each time for intentions other those described in misbehavior reports or asserted within dispositions rendered on July 8, 2008, September 16, 2008, October 23, 2008 and December 18, 2008; unlike disciplinary actions he'd perform against other prisoners subject to same tier rules and obligations.

**A7. SUPERVISORY LIABILITY**

27. Bradt became aware of program discrimination/improper removal via grievance appeal procedure. However, his gross supervising negligence allowed the continuance of such custom with deliberate failure to act and remedy unconstitutional activities occurring at facility with decision rendered May 16, 2008.

28. Likewise, CORC members who reviewed on July 2, 2008 the appeal of said Superintendent uphelded his determination. Although, such Committee should have disallowed the continuation of aforemention custom, it deliberately failed to act and remedy wrong after being informed constitutional violations occurring.

29. The Diversity Management/Affirmative Action Office; Director John Doe, failed to supervise and manage the monitoring of discriminatory grievances like above mention complaint forwarded to him by plaintiff, which were grossly negligent of subordinates who been able to prevent or rectify the situation that occurred as well as deliberately hadn't acted and remedy wrong after being informed about unconstitutional activities.

30. Titus after learning of program discrimination allegations created a custom that sanctioned conduct asserted within grievance. When he deliberately failed to employ the establish expedited procedure and forward the Office of Diversity Management a copy of complaint.

31. The constitutional basis for these claims under 42 U.S.C. §1983 is Fourteenth amendment violation.

32. The relief I am seeking for above claims are declaratory relief, compensatory and punitive damages in the amount of $10,000.00 from each and every Defendant involved in the above.

**B. EXHAUSTION OF ADMINISTRATIVE REMEDIES**

33. Plaintiff repeat as well as realleges each and every allegation set forth in paragraph 22-23 as if fully set forth herein.

**VII. DUE PROCESS VIOLATIONS**

34. During every disciplinary proceeding reference above conducted by Schornsthelmer his bias/partial propensity

-5-

was displayed to some extent or another: with distortion of testimony, dishonest suppression of evidence as well as relevant questions for witnesses, failure of notification about adverse evidence being considered and his pre-determination as to plaintiff's guilt.

35. Whereas with September and December proceedings helded before Schornsthelmer plaintiff was also denied the opportunity following his reference to facility policy supposedly relevant to charges, after such had been requested be produce so plaintiff could provide a reply.

36. Those violations combine with other substantial and procedural due process errors - excessed all constitutional boundaries - cause a devastating effect on plaintiff's defense ability presentation in a proceeding or so.

A. SUPERVISORY LIABILITY

37. Card, Coveny, Hughes and Noeth became aware of Schornsthelmer aforemention errors, when Bradt referred matters to them for a resolution. However, the officials mention were grossly negligent in their supervision which allowed the continuance of such custom due to a deliberate failure to act and remedy constitutional violations that occurred repeatedly at Elmira.

38. The constitutional basis for these claims under 42 U.S.C. §1983 is Fourteenth amendment violation.

39. The relief I am seeking for above claims are declaratory relief, compensatory and punitive damages in the amount of $10,000.00 from each and every Defendant involved in the above.

B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

40. Did you grieve and/or appeal these claims: No

    If your answer is No, state why you did not: disciplinary proceedings are non-grievable issues (7NYCRR§ 701.3(e)(2)).

VIII. BREACH OF CONTRACT

41. In March 1998 (or prior thereto) Elmira prison population voted and accepted the terms set forth within Inmate Television Set directive (#4921, dated January 27, 1989) in circulation at that time which still allowed prisoners outside sources to order packages from approved facility vendors for them. Facility prisoners complied with 2002 to 2008 with the last issued by LeClaire being effective at Elmira, resulting in defective televisions be solded at inflatable prices as well as package status quo being restricted to those (besides twenty pounds food packages from home twice a year) ordered directly from a prisoners

institutional amount; had been damaging to prison populations statewide. see also, EL-34-369-08.

42. Such interference also effected and/or minimize plaintiff's (and others similarly situation) ability to seek prospective economic advantages - like bargains as well as discounts - from catalog companies, retailers, major department stores, etc. for a multitude of items due to the non agreed upon unilateral revisions of Leclaire that all but ended New York State prisons microcosm consumerism; with a couple for plaintiff being Bust the Move, Mike's, East Bay, J.C. Penney, etc.

43. Additional damages cause to plaintiff as a result of Defendant's unilateral revision breach of contract tortious interference is the unlawfully restrictive package privileges conditions imposed without any due process being afforded.

44. When these issues were brought to Bradt attention pursuant to grievance appeal process etc; he consented to such oppressive unfairness with decision rendered. Instead of soughting a variance from DOCS Central Office with respect to overreaching contractual terms.

A. SUPERVISORY LIABILITY

45. CORC members who reviewed grievance appeal, inter alia, upheld the directive as is. Although, such Committee were suppose to disallow the revision of provision, it deliberately failed to act and remedy wrong after being informed about unilateral agreement modifications as well as unconscionability occurring.

46. The constitutional basis for these claims under 42 U.S.C. § 1983 are Eighth and Fourteenth amendment violations.

47. The relief I am seeking for above claims are declaratory and injunctive reliefs, compensatory and punitive damages in the amount of $100,000.00.

B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

48. Plaintiff repeat as well as realleges each and every allegation set forth in paragraph 22-23 as if fully set forth herein.

IX. INJUNCTIVE ACTS, CUSTOMS, PROTOCOL AND VIOLATIONS

49. The Office of Diversity Management under Director John Doe supervision has failed to monitor grievances filed as well as been delinquent in duty of rectifying complaints - such as plaintiff's in April 2008 - submitted to said office asserting allegations of discriminatory policies, procedures or acts adverse affecting prisoners, which violate the Eighth and Fourteenth amendments of the United States Constitu-

tion ("U.S. Constitution") prohibiting discrimination of civil rights because of race, creed, status, etc. see also, N.Y. Const. Art. I § 11.

50. Bellamy has failed to improve the IGP filing process that has only a singular means which requires the mailing of complaints to IGP facility supervisors thereby subjecting grievable matters to easy exploitation and manipulation with issues being discarded whenever feasible as well as assure all grievances alleging discrimination are expeditely process with copies forwarded to Office of Diversity Management, which violates the First and Fourteenth amendments of U.S. Constitution to petition the government for a redress of grievances. see also, N.Y. Const. Art. I § 9.

51. Subsequently another problem that plague grievance program would be the inefficient manner of soughting information - that's been adopted informally in recent times for most cases - with targeted areas of facility where grievable matters derive; supervisors providing information whose investigative reports are not mandated to cite governing protocol or include factual data (i.e. log book entries, To-From reports, disputed material, work orders, etc.) relative to complaints and reports being prepared; is one of the main causes for IGP been dysfunctional that also violates the First and Fourteenth amendments of U.S. Constitution to petition the government for a redress of grievances. see also, N.Y. Const. I § 9.

52. The enforcement of legal materials to a limited amount of draft bags has affected as well as interferred with several matters plaintiff's currently litigating as well as those that could possibly be. Due to limited storage restraints for necessary and/or crucial factual as well as research material required for preparation, presentation, justification or prosecution of a case matter. That previously hadn't been an issue for plaintiff, but since being enacted such has infringed upon his First amendment right.

53. The Administrative Deputy, including other facility personnel, has failed to solve the scheduling conflict with diabetic 3:00 p.m. insulin injections as well as their one hour recreation that occurs at same time plaintiff seriously doubt (which is obvious from time that's elapse since being notified) individuals responsible will ever do so to assure plaintiff is provided with the same opportunities - as others similarly situated - to receive the services and privileged guaranteed to him by the constitution.

54. There's a facility custom at Elmira, where prisoners admitted to Special Housing Unit are not issued their personal property within seventy-two hours time period, nor is grievance forms ever supplied upon request or otherwise, which has been done in deliberate violation of plaintiff's Eighth and Fourteenth

amendment rights.

55. Plaintiff's - and others similarly situated - agreement to purchase merchandise from facility approved vendors with the exception of receiving twenty pounds packages from home twice a year, in exchange for in cell television sets program, were in effect at Elmira for about a decade until some unilateral session of revisions to agreement set forth within directive # 4921 unfairly begin to occur and cause interference; solely for the intentions and purposes of overreaching contractual terms with oppressive stipulations.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays that this Court:

a) ORDER, pursuant to Rule 65 of the Federal Rules of Civil Procedure ("FRCP") permanent, preventive and mandatory injunctive relief enjoining Defendants to revise and/or comply with title 7 of New York Codes, Rules and Regulations and/or applicable DOCS Directive(s); 701.5 [a][1] insert the following text after the first sentence; However, complaints handed to IGP staff members, mailed to designated facility Superintendent's or the IGP Director's Office(s), due to unknown complications, will be filed in accordance with this section as well; once transmitted or delivery to appropriate office; 701.5 [d][2][i] revise last sentence as follow: A representative of the Office of Diversity Management will attend CORC hearings and vote on grievances alleging discrimination; 701.6 [e] add a new subsection 3 to read as follow: Area Supervisor's Investigation, whenever applicable the procedure of having certain areas of the facility, supervisor's prepare an investigation report in response to grievable matters, such shall include the relevant policy and factual data regarding complaints allegation(s) and reports input covering every issue of situation; otherwise those issues being grieved unanswered will be deem true for all intent and purpose relative to grievance proceedings only; 701.9 [b] revise as follow: A grievance alleging unlawful discriminatory acts, policies or procedures shall be given a grievance calendar number, assigned a particular code number designated for said complaints and recorded in sequence with all other grievances on the grievance clerk's log (Form # 2136); reinstate Directive # 4921, January 27, 1989 status quo with revisions to certain provision as follow: Sets to be used by inmate must be purchased through the facility commissary or approved vendors and accompanying accessories are allowed (III-A), The make, model and screen size (not to exceed 13" diagonal measurement) will be determined by the Department for purposes of standardization and lowest possible cost (III-B), insert the following text after the last sentence

-9-

of IV-A-5:, if it is decided television won't be pack with standard four bags of personal property.; Elmira Policy and Procedure #B.85,II-F insert the following text after last sentence: Only exceptions will be those that attended programs with medical excuses for passing Center Gate and returning to proceed to the Fieldhouse; #B.85,II add a new subsection I to read as follow: Diabetics - that for whatever reasons may occur - who were unable to arrive at center gate before last group is escorted to fieldhouse area are entitled, at less, to a company shower and telephone privilege in assigned blocks until recreation return and is locked in; Diversity Management Office review and process all discrimination grievance by preparing a report setting forth reason why matter should or shouldn't be successively resolved, such office also shall be authorized to demand subjective facility protocol the reasons for and/or officials answer to allegations of discrimination set forth within complaints receive by such office as well as Commissioner and complainant be notified within a report of finding discriminatory in nature including actions recommending how matter should be reconciled; assign an escort officer appear at Elmira infirmary 3:15 p.m. to gather diabetics wishing to attend one hour recreation who will be taken to receive their shots first, then once all prisoners including those release from blocks and programs. When all attending recreation is assembled escort officer after inspecting program cards will process to fieldhouse area at 3:40/50 p.m. the latest; Elmira general population diabetic 3:00 p.m. insulin run be station on first floor of infirmary to conveniently avoid any scheduling conflict and provide reasonable access for medical treatment rendered to those with said condition at that period; fully comply with provisions set forth at 701.9[C] & [e], 701.7 [a] [1] & [2], 304.14, 302.2 [e][2] & [g][2]; and

b) ORDER, pursuant to Rule 65 of FRCP permanent and prohibitory injunctive relief enjoining Defendants to delete and/or repeal DOCS Directive #4913, III-Exception-1, E-1b &3; F-1a(1)(a) &(b); and

c) ISSUE, a declaratory judgment that, pursuant to 42 U.S.C. §1983, legal material provisions set forth in DOCS Directive #4913; all revisions of January 27, 1989 Directive #4921; Defendant Schornsteimer actions at every proceeding held against plaintiff, who should be excluded from conducting any prisoners disciplinary hearing; and

d) ISSUE, a declaratory judgment that, pursuant to 42 U.S.C. §1983, Defendants be relinquish two years seniority, demoted and/or removed from post; and

-10-

e) ORDER, compensatory and punitive damages for plaintiff to the extent that the proof may show at a trial of the issues herein; and

f) ORDER, such other and further relief as the Court may deem just, proper and equitable with consent of plaintiff.

Plaintiff also wishes to have a jury trial.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on January 20, 2011

/s/ *[signature]*
Pro Se, Plaintiff