UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN GREEN, 97A0801,

                Plaintiff,

v.

BRIAN FISCHER, et al.,

                Defendants.

_____

**DECISION AND ORDER**

6:11-cv-06063 EAW

## INTRODUCTION

Plaintiff Shawn Green ("Plaintiff") commenced the instant action on February 7, 2011. (Dkt. 1). The operative pleading is the Second Amended Complaint filed on August 26, 2012. (Dkt. 44). Plaintiff alleges various constitutional violations arising out of his incarceration at the Elmira Correctional Facility. (*Id.*). Plaintiff has named 34 employees of the Department of Corrections and Community Supervision ("DOCCS") as defendants (collectively "Defendants"). (*Id.*). Plaintiff is currently housed at Upstate Correctional Facility. (Dkt. 58).

Currently pending before the Court are (1) Defendants' motion to dismiss the Second Amended Complaint or, in the alternative, for summary judgment (Dkt. 47) and (2) Plaintiff's cross-motion for summary judgment (Dkt. 51). For the reasons set forth below Defendants' motion is granted in part and denied in part. Plaintiff's cross-motion is denied.

## BACKGROUND

Plaintiff is an inmate formerly housed at the Elmira Correctional Facility ("Elmira"). Plaintiff's Second Amended Complaint (Dkt. 44) is brought pursuant to 42 U.S.C. § 1983 and purports to allege various deprivations of Plaintiff's constitutional rights. Plaintiff alleges a number of discrete factual circumstances, each of which is set forth below.

Plaintiff alleges that while he was incarcerated at Elmira, he was forced to choose whether to report to the infirmary for a diabetes clinic or to attend the one-hour of recreation provided to inmates, as both were scheduled for 3:00 p.m. (Dkt. 44 at ¶ 6). According to Plaintiff, defendant Schmelzle prepared an investigation report related to this conflict. (*Id.* at ¶ 7). Plaintiff further alleges that defendant William Hopkins, the former Deputy Superintendent of Administration at Elmira, was responsible for implementing the one-hour recreation policy. (*Id.* at ¶ 9).

Plaintiff next alleges that he was removed from the "a.m. recycling program" at Elmira due to a "confidential note" sent to defendant Semski "alleging inappropriate activities and conduct" by Plaintiff. (*Id.* at ¶¶ 10-11). Plaintiff claims that he was subsequently informed by defendant Friot that he was being removed from the recycling program for security reasons. (*Id.* at ¶ 13). Plaintiff allegedly filed a grievance related to his removal from the recycling program, which was denied. (*Id.* at ¶ 14).

Plaintiff's next allegation is that "Directive #4913" was revised by defendant Lucien J. LeClaire to limit inmates to one "draft bag" of legal work in their living

quarters. (*Id.* at ¶ 16). Plaintiff claims that he filed a grievance related to this policy and that his grievance was denied. (*Id.* at ¶ 17).

Plaintiff also alleges that his due process rights were violated at various disciplinary hearings held between July and December 2008. (*Id.* at ¶ 18). Plaintiff does not specify the nature or outcome of these disciplinary hearings.

Plaintiff makes further allegations regarding the "breach of [a] television contract agreement" by defendant LeClaire. (*Id.* at ¶¶ 20-23). It is unclear in what manner Plaintiff alleges the television contract was breached.

Plaintiff also alleges that when he was admitted to the special housing unit ("SHU") at Elmira, he was deprived of his personal belongings for 14 days. (*Id.* at ¶ 24).

Finally, Plaintiff alleges that various grievances that he filed were improperly processed and denied. (*Id.* at ¶¶ 26-28).

Plaintiff commenced this action on February 7, 2011. (Dkt. 1). Pursuant to the Court's instruction, Plaintiff filed a Second Amended Complaint on December 26, 2012. (Dkt. 44, 46). Defendants filed the pending motion to dismiss or for summary judgment on September 26, 2014. (Dkt. 47). Plaintiff filed his opposition on October 30, 2014. (Dkt. 49).

The case was transferred to the undersigned on December 4, 2014. (Dkt. 50). Plaintiff filed his cross-motion for summary judgment on February 11, 2015. (Dkt. 51). Defendants did not file opposition papers.

## DISCUSSION

### I. Legal Standard

Defendants have moved to dismiss the Second Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Federal Rule of Civil Procedure 56. (Dkt. 47-4). Plaintiff has filed a cross-motion for summary judgment. (Dkt. 51).

In considering a motion to dismiss pursuant to Rule 12(b)(6), a court generally may only consider "facts stated in the complaint or documents attached to the complaint as exhibits or incorporated by reference." *Nechis v. Oxford Health Plans, Inc.*, 421 F.3d 96, 100 (2d Cir. 2005). A court should consider the motion "'accepting all factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's favor.'" *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)). To withstand dismissal, a plaintiff must set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and citations omitted). Thus, "at a bare minimum, the operative standard requires the plaintiff to provide the grounds upon which his claim rests through factual

allegations sufficient to raise a right to relief above the speculative level." *Goldstein v. Pataki*, 516 F.3d 50, 56-57 (2d Cir. 2008) (internal quotation marks omitted).

In addition, "[i]t is well settled that *pro se* litigants generally are entitled to a liberal construction of their pleadings, which should be read to raise the strongest arguments that they suggest." *Green v. United States*, 260 F.3d 78, 83 (2d Cir. 2001) (internal quotation marks omitted); *see also Hemphill v. New York*, 380 F.3d 680, 687 (2d Cir. 2004) ("It is well-established that 'when [a] plaintiff proceeds *pro se* . . . a court is obliged to construe his pleadings liberally, particularly when they allege civil rights violations.'") (quoting *McEachin v. McGuinnis*, 357 F.3d 197, 200 (2d Cir. 2004)).

With respect to the competing motions for summary judgment, Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). Once the moving party has met its burden, the opposing party "'must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*.'" *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (quoting *Matsushita Elec.*, 475 U.S. at 586-87) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute

between the parties will not defeat an otherwise properly supported motion for summary judgment. . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

## II. Official Capacity Claims

Plaintiff purports to sue various Defendants in their official capacities. (*See* Dkt. 44 at ¶ 5). Defendants argue that the official capacity claims must be dismissed because "lawsuits against employees of New York State in their official capacity are barred under the Eleventh Amendment." (Dkt. 47-4 at 7).

"Claims against state employees in their official capacity are deemed claims against the state itself, and are barred by the Eleventh Amendment." *Coleman v. Beale*, 636 F. Supp. 2d 207, 212 (W.D.N.Y. 2009). Moreover, although "prospective injunctive relief is available against individuals being sued in their official capacities," *Kanciper v. Lato*, 989 F. Supp. 2d 216, 233 (E.D.N.Y.2013), any claim for injunctive relief made by Plaintiff is moot in light of his subsequent transfer to the Upstate Correctional Facility. *See Thompson v. Carter*, 284 F.3d 411, 415 (2d Cir. 2002) ("A prisoner's transfer to a different correctional facility generally moots his request for injunctive relief against employees of the transferor facility."); *Rosales v. Wright*, No. 10-CV-6044L, 2012 WL 87123, at *1 (W.D.N.Y. Jan.11, 2012) ("It is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility. . . .") (quotation omitted). As a result, Plaintiff's claims against Defendants in their official capacities are dismissed.

### III. Defendant P. Chappius

Defendant P. Chappius, identified in the Second Amended Complaint as the Superintendent of Elmira, argues that he must be dismissed from this action because there are no allegations against him. (Dkt. 47-4 at 8).

"To bring a § 1983 claim against a prison official, a plaintiff must allege that individual's personal involvement; it is not enough to simply assert that the defendant is a 'link in the prison chain of command.'" *Frederick v. Sheahan*, No. 6:10-CV-6527 (MAT), 2014 WL 3748587, at *2 (W.D.N.Y. July 29, 2014) (quoting *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004)). "A complaint based upon a violation of Section 1983 that does not allege facts establishing the personal involvement of an individual defendant fails as a matter of law." *Hernandez v. Sposato*, No. 12-CV-2530 (SJF)(WDW), 2014 WL 3489818, at *4 (E.D.N.Y. July 9, 2014).

As Defendants correctly point out, although Chappius is listed as a defendant in the caption of the Second Amended Complaint, there are no factual allegations against him. Plaintiff's claims against Chappius fail as a matter of law and are dismissed.

### IV. Restrictions on Legal Material

Plaintiff alleges that Directive #4913, which limited him to one bag of legal materials in his cell, violated his constitutional right to access the courts. (*See* Dkt. 49 at 10-13). Defendants argue that Plaintiff's claims based on Directive #4913 must be dismissed because: (1) the limitations set by Directive #4913 are reasonable; (2) there are

no allegations that Defendants acted deliberately and maliciously; and (3) Plaintiff has not alleged that he suffered an actual injury.

"In order to state a claim for denial of access to the courts, 'a plaintiff must allege that the defendant took or was responsible for actions that hindered [his] efforts to pursue a legal claim.'" *Simmons v. Adamy*, 987 F. Supp. 2d 302, 307 (W.D.N.Y. 2013) (quoting *Davis v. Goord,* 320 F.3d 346, 351 (2d Cir. 2003)) (alteration in original). "[A]n inmate alleging a denial of access to courts must show actual injury as a result of the deficient access to courts. The cause of the injury must be inadequacy of the access. Plaintiff must show that a non-frivolous legal claim was frustrated or impeded due to the actions of prison officials." *Avent v. Doe*, No. 9:05CV1311(FJS/GJD), 2008 WL 877176, at *7 (N.D.N.Y. Mar. 31, 2008) (citations omitted).

Additionally, "[w]hile it is true that under the Constitution a correctional facility must provide an inmate with meaningful access to the courts, the mere limitation of access to legal materials, without more, does not state a constitutional claim. . . ." *McAllister v. Goord*, No. 9:06-CV-0442 (TJM)(RFT), 2009 WL 5216953, at *3 (N.D.N.Y. Dec. 30, 2009). Courts in this Circuit have therefore upheld reasonable limitations on the amount of legal materials an inmate is permitted to keep in his cell. *See, e.g., Amaker v. Fisher*, No. 07-CV-0279(SR), 2010 WL 2572936, at *5 (W.D.N.Y. June 23, 2010), *aff'd sub nom., Amaker v. Fischer*, 453 F. App'x 59 (2d Cir. 2011) ("while it is clear that DOCS cannot deprive plaintiff of his *pro se* work product entirely, courts have found limitations on the quantity of legal materials inmates are permitted to possess to be reasonable"); *Shabazz v. Coughlin*, No. 93 CIV. 8148 (LAP), 1996 WL

164674, at *3 (S.D.N.Y. Apr. 9, 1996) (finding it "clearly reasonable to limit the amount of materials accumulating in a cell").

With respect to actual injury, Plaintiff's Second Amended Complaint fails to identify any non-frivolous legal claim which was frustrated or impeded by Directive #4913. *See McAllister v. Fischer*, No. 10-CV-610 FJS/DRH, 2012 WL 7681635, at *8 (N.D.N.Y. July 6, 2012), *report and recommendation adopted*, 2013 WL 954961 (N.D.N.Y. Mar. 12, 2013) (dismissing claim based on Directive #4913 because plaintiff did not identify any underlying action which was prejudiced). However, in his papers opposing Defendants' motion, Plaintiff alleges that the limitation on his legal papers prevented him from filing an appeal in his underlying criminal matter. (Dkt. 49 at 3, 12). "A district court deciding a motion to dismiss may consider factual allegations made by a *pro se* party in his papers opposing the motion." *Walker v. Schult*, 717 F.3d 119, 123 n. 1 (2d Cir. 2013). However, even considering the expanded allegations made in his opposition papers, Plaintiff has failed to adequately allege an actual injury. "To establish an 'actual injury,' plaintiff must show that the defendant's conduct frustrated the plaintiff's efforts to pursue a nonfrivolous claim. To satisfy the requirement that the underlying claim not be frivolous, a plaintiff must describe the claim well enough for the court to determine whether the claim had an arguable basis in either law or fact." *Zeigler v. New York*, 948 F. Supp. 2d 271, 294 (N.D.N.Y. 2013) (citations and quotations omitted). Plaintiff has failed to provide any detail regarding the appeal he allegedly was prevented from making, and the Court is therefore unable to conclude that it was non-frivolous.

Moreover, Plaintiff's claim for denial of access to the courts fails as a matter of law because he has not alleged that any of the Defendants deliberately and maliciously impeded his access to the courts. "To succeed on a denial of access claim, a plaintiff must show that the defendants . . . engaged in deliberate and malicious conduct." *DeMeo v. Tucker*, 509 F. App'x 16, 18 (2d Cir. 2013); *see also Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) ("[I]n order to survive a motion to dismiss a plaintiff must allege not only that the defendant's alleged conduct was deliberate and malicious, but also that the defendant's actions resulted in actual injury to the plaintiff such as the dismissal of an otherwise meritorious legal claim."). With respect to the Defendants' actions relative to Directive #4913, the Second Amended Complaint alleges only that defendant LeClaire wrote the directive, that defendant Fisher "endorsed" the directive, and that defendant Bradt denied a grievance related to the directive. (Dkt. 44 at ¶¶ 16-17). These allegations do not in any way support the inference that any of the Defendants deliberately and maliciously impeded Plaintiff's access to the courts. As discussed above, courts in this Circuit have recognized the legitimate concerns related to the accumulation of excessive material in prison cells and have consistently upheld reasonable limitations thereof. Plaintiff's claim for denial of access to the courts is therefore dismissed. *See Banks v. Annucci*, 48 F. Supp. 3d 394, 412 (N.D.N.Y. 2014) (dismissing claim for denial of access to courts based on alleged confiscation of complaint where there was no allegation that any defendant acted deliberately or maliciously).

V.   **Conflict between Recreation and Diabetes Clinic**

Plaintiff alleges that he was impermissibly forced to choose between participating in one hour of allowed recreation or attending a diabetes clinic. (Dkt. 44 at ¶¶ 6-9). Plaintiff claims a violation of his right to equal protection as a result.

"The Equal Protection Clause of the United States Constitution mandates equal protection under the law, and that similarly-situated persons are treated equally. To allege a violation of the Equal Protection Clause, it is axiomatic that a plaintiff must allege that similarly situated persons have been treated differently. The allegation that a plaintiff was treated differently than others similarly situated is essential to an equal protection claim." *Richard v. Fischer*, 38 F. Supp. 3d 340, 354 (W.D.N.Y. 2014) (citations and quotations omitted). Furthermore, "[e]qual protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy. It is well established that . . . discriminatory intent or purpose is required to show a violation of the Equal Protection clause." *Reynolds v. Barrett*, 685 F.3d 193, 201 (2d Cir. 2012) (internal quotations and citation omitted) (alteration in original).

Here, Plaintiff's Second Amended Complaint, on its face, fails to state an equal protection claim related to the alleged conflict between the diabetes clinic and Plaintiff's recreation time. *See Okoh v. Sullivan*, 441 F. App'x 813, 814 (2d Cir. 2011) ("the district court correctly concluded that with respect to [plaintiff's] equal protection claims, the second amended complaint failed to set forth sufficient, non-conclusory factual allegations from which a reasonable inference could be drawn that [plaintiff] suffered adverse treatment compared with other similarly situated individuals, or that such

- 11 -

selective treatment was based on impermissible considerations such as race.") (quotations omitted). However, in his opposition papers, Plaintiff alleges that when Michael Bennett, a Caucasian diabetic inmate, filed a grievance related to the alleged conflict between the diabetes clinic and recreation, remedial measures were taken to correct the conflict for Bennett, and that similar remedial measures were not offered to Plaintiff, who is black. (Dkt. 49 at 13). These additional factual allegations adequately identify a similarly situated individual whom was allegedly treated differently on the basis of his race. Plaintiff's equal protection claim related to the conflict between the diabetes clinic and recreation will be permitted to proceed as to defendant Schmelzle, who is alleged to have conducted a biased investigation into Plaintiff's complaint on the matter. The allegations in the Second Amended Complaint do not support the inference that any other defendant was personally involved in the alleged discriminatory conduct[1], and so this claim is dismissed as to all the other defendants.

Defendants have also moved for summary judgment with respect to Plaintiff's claims. Having reviewed the evidence submitted by Defendants with respect to Plaintiff's claim based on the alleged conflict between the diabetes clinic and recreation, the Court finds that summary judgment as to defendant Schmelzle would be premature at this time. A review of the docket in this matter indicates that no discovery has been

---

[1] Specifically, the allegation that defendant Hopkins implemented the one-hour recreation policy is insufficient to establish that he was personally involved in the alleged deprivation of Plaintiff's rights. There is no allegation in the Second Amended Complaint plausibly supporting the inference that Hopkins was involved in the scheduling of the diabetes clinic, or that he was involved in any manner in the investigation or resolution of Plaintiff's complaint about the alleged scheduling conflict.

conducted. *See Brunson v. Jonathan*, 727 F.Supp.2d 195, 199 (W.D.N.Y. 2010) ("Factual issues remain to be decided with respect to the merits of [Plaintiff's] claims. Whether those issues may at some point be properly disposed of on a motion for summary judgment, on a more complete record than the one before [the Court], remains to be seen, but at this point summary judgment would plainly be premature."). Defendants' motion for summary judgment on this claim is denied without prejudice.

## VI. Participation in the Recycling Program

Plaintiff alleges that he was removed from his position in the recycling program based on a confidential note alleging improper conduct by Plaintiff. (Dkt. 44 at ¶¶ 10-13). Plaintiff claims that his removal from the recycling program was based on "discrimination," which the Court liberally construes as attempting to state an equal protection claim. The standards for an equal protection claim are discussed in section V, *supra*.

Plaintiff has failed to state an equal protection claim based on his removal from the recycling program. Although Plaintiff alleges that "mostly caucasian prisoners" were placed into the program (Dkt. 44 at ¶ 10), it is not his placement into the program that is at issue. Instead, it is his removal from the program that he contests, and with respect to that issue, Plaintiff has failed to allege that any similarly situated inmates were treated differently. Plaintiff has thus omitted an essential element of an equal protection claim. *See Richard v. Fischer*, 38 F. Supp. 3d at 354. Any equal protection claim based on Plaintiff's removal from the recycling program fails as a matter of law.

Plaintiff also references "due process" in passing when discussing his removal from the recycling program. (Dkt. 44 at 8). To the extent that Plaintiff seeks to assert a due process claim based on his removal from the program, such a claim also fails as a matter of law. Prisoners do not have a liberty or property interest in their prison jobs and therefore cannot state a due process claim related to changes in work assignments. *See Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987); *Crenshaw v. Hartman*, 681 F. Supp. 2d 412, 414 (W.D.N.Y. 2010) ("It is well established that inmates have no right, constitutional or otherwise, to any particular job or assignment within a prison.").

## VII. Access to Personal Property in the SHU

Plaintiff claims that when he was moved to the SHU at Elmira, he did not have access to his personal belongings for 14 days. (Dkt. 44 at ¶ 24). Plaintiff alleges that this violated both his right to be free from cruel and unusual punishment and his right to equal protection of the law.

The Court need not address the merits of Plaintiff's claim for deprivation of his personal property because, as Defendants argue, no defendant is alleged to have been personally involved in the alleged deprivation. As discussed above, "[a] plaintiff asserting a § 1983 claim against a supervisory official in his individual capacity must allege that the supervisor was personally involved in the alleged constitutional deprivation." *Liner v. Goord*, 582 F. Supp. 2d 431, 433 (W.D.N.Y. 2008).

> That requirement may be satisfied by alleging facts showing that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the

continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate[] indifference to others' rights by failing to act on information indicated that constitutional acts were occurring.

*Id.*

In this case, Plaintiff alleges that defendant Bradt knew that Plaintiff had complained about the "issuance of SHU property violations." (Dkt. 44 at 6-7). This vague allegation is insufficient to establish personal involvement by Bradt. A prison superintendent's knowledge that a complaint has been made is insufficient to establish personal involvement. *See McGee v. Pallito*, No. 1:10-CV-11, 2011 WL 6291954, at *12 (D. Vt. Aug. 3, 2011), *report and recommendation adopted*, No. 1:10-CV-11-JGM-JMC, 2011 WL 6294202 (D. Vt. Dec. 15, 2011) (collecting cases). "Were it otherwise, virtually every prison inmate who sues for constitutional torts by prison guards could name the Superintendent as a defendant since the plaintiff must pursue his prison remedies . . ., and invariably the plaintiff's grievance will have been passed upon by the Superintendent." *Thompson v. New York*, No. 99CIV.9875(GBD)(MHD), 2001 WL 636432, at *7 (S.D.N.Y. Mar. 15, 2001).

Plaintiff also alleges that defendants Correa and Fanelli, in their capacities as "SHU Sergeant[s]," "permitted a practice" of withholding inmate's personal property until 72 hours had expired. (Dkt. 44 at 11). This allegation is insufficient to demonstrate that Correa and Fanelli were personally involved in the alleged withholding of Plaintiff's personal property for two weeks. Indeed, Plaintiff's affirmative allegation that Correa and Fanelli established a practice whereby prisoners in the SHU were separated from

their belongings until 72 hours had expired suggests that they did not establish a practice whereby personal items were withheld for weeks at a time. Moreover, Correa and Fanelli are not alleged to have created the policy governing personal property upon admittance to the SHU, or to have otherwise been personally involved in the delay in returning Plaintiff's personal property.

Because none of the Defendants are alleged to have been personally involved in withholding Plaintiff's personal property for two weeks after he was admitted to the SHU, his claims based on this incident are dismissed.

## VIII. Disciplinary Hearings

Plaintiff alleges various due process violations associated with disciplinary hearings held between July and October 2008. (Dkt. 44 at 9). He does not state what conduct these disciplinary hearings involved, and states only that he was subjected to "unnecessary disciplinary sanctions" as a result of the hearings. (*Id.*).

"[A] prisoner asserting a § 1983 claim for denial of due process at a disciplinary hearing must first identify a liberty interest protected by the Due Process Clause of which he was deprived, and then show that he was deprived of that interest without due process of law." *Aguirre v. Kendra*, No. 14-CV-6346L, 2015 WL 5011976, at *1 (W.D.N.Y. Aug. 24, 2015). Plaintiff has failed to identify such a liberty interest. "[M]inor sanctions imposed on [a] plaintiff implicate[] no protected liberty interest for which due process protections would have been required." *Brown v. White*, No. 9:08-CV-200 (GLS/ATB), 2010 WL 985184, at *12 n.15 (N.D.N.Y. Mar. 15, 2010). Based on the information in the Second Amended Complaint, no fact-finder could conclude that Plaintiff suffered the

deprivation of a protected liberty interest. Plaintiff's due process claims based on the disciplinary hearings held between July and October 2008 are insufficient as a matter of law and are dismissed.

## IX. Breach of the Television Contract

Plaintiff alleges that defendant LeClaire revised a directive regarding television and, in doing so, "breach[ed] [a] television contract agreement." (Dkt. 44 at ¶¶ 20-23). As Defendants point out, Plaintiff has previously tried to bring a federal lawsuit based on the directive governing inmate television usage, and has been informed that "any constitutional claim predicated upon violation of a DOCS directive is not cognizable under 42 U.S.C. § 1983" and that moreover, "[a] DOCS directive lacks the trappings of a contract enforceable at law." *Green v. Greene*, No. 9:07-CV-0351(GTS/DEP), 2009 WL 5874308, at *18 (N.D.N.Y. Mar. 30, 2009), *report and recommendation adopted*, 2010 WL 455456 (N.D.N.Y. Feb. 2, 2010). Plaintiff's claim in this case fails for the same reasons – he has failed to identify a constitutional right allegedly violated by the revision of the television directive and has also failed to allege the elements of a breach of contract claim. Plaintiff's claims based on the alleged violation of the "television contract agreement" are dismissed.

## X. Processing of Grievances

Finally, Plaintiff has asserted that various grievances filed by him were rejected or otherwise improperly processed and disposed of. (Dkt. 44 at ¶¶ 26-28). As this Court has explained:

> The First Amendment protects a prisoner's right to meaningful access to the courts and to petition the government for the redress of grievances. However, inmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim. If prison officials ignore a grievance that raises constitutional claims, an inmate can directly petition the government for redress of that claim. Therefore, the refusal to process an inmate's grievance or failure to see to it that grievances are properly processed does not create a claim under § 1983.

*Shell v. Brzezniak*, 365 F.Supp.2d 362, 369-70 (W.D.N.Y. 2005) (citations omitted). In other words, Plaintiff has no constitutional right to proper processing of grievances.

Plaintiff's claims related to the processing of his grievances are not cognizable as a matter of law and are therefore dismissed.

## XI. Qualified Immunity

Defendants have summarily argued that they are entitled to qualified immunity with respect to all of Plaintiff's claims. (Dkt. 47-4 at 9-10). "Qualified immunity is an affirmative defense, on which the defendant officials bear the burden of proof." *Sudler v. City of N.Y.*, 689 F.3d 159, 174 (2d Cir. 2012). The only claim remaining in this action is Plaintiff's equal protection claim against defendant Schmelzle. The Court finds that defendant Schmelzle has not shown at this stage of the proceedings that he is entitled to qualified immunity as a matter of law.

## XII. Plaintiff's Cross-Motion for Summary Judgment

Plaintiff has cross-moved for summary judgment. (Dkt. 51). With respect to the claims that the Court has found are subject to dismissal in favor of Defendants, Plaintiff's motion is denied. With respect to the remaining claim against defendant Schmelzle,

Plaintiff has not established his entitlement to judgment as a matter of law at this stage of the proceedings. Moreover, and as noted above, the record on this claim has not been developed. Plaintiff's motion for summary judgment on this claim is denied without prejudice.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss (Dkt. 47) is granted with respect to all of Plaintiff's claims except for his equal protection claim against defendant Schmelzle in his individual capacity. Defendants' alternative request for summary judgment is denied with respect to the remaining claim against defendant Schmelzle. Plaintiff's cross-motion for summary judgment (Dkt. 51) is denied. The Clerk of the Court is directed to terminate all defendants except defendant Schmelzle from this action. Defendant Schmelzle is ordered to answer the remaining claim in the Second Amended Complaint within 20 days of entry of this Decision and Order.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: December 23, 2015
Rochester, New York