UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

SHAWN GREEN,

                    Plaintiff,

         v.

SCHMELZLE,

                    Defendant.

_____

**DECISION AND ORDER**

6:11-CV-06063 EAW

## INTRODUCTION

Plaintiff Shawn Green ("Plaintiff") commenced this action on February 7, 2011. (Dkt. 1). The operative pleading is the second amended complaint filed on August 26, 2012. (Dkt. 44). All named Defendants except for Defendant Schmelzle ("Defendant") were dismissed by the Court on December 23, 2015. (Dkt. 65). Currently pending before the Court is Defendant's motion for summary judgment. (Dkt. 78). For the reasons stated below, Defendant's motion is denied.

## BACKGROUND

Plaintiff is an inmate formerly housed at the Elmira Correctional Facility ("Elmira"). Plaintiff's second amended complaint is brought pursuant to 42 U.S.C. § 1983. (Dkt. 44). In relevant part, Plaintiff alleges that Defendant conducted a discriminatory investigation into Plaintiff's grievance EL34-054-08, which Plaintiff filed on March 7, 2008. (*See id.* at 7-8; Dkt. 78-3 at 8). Plaintiff is a diabetic. (*See* Dkt. 44 at 7). In the grievance, Plaintiff claimed that he was denied recreation, showers, and the

- 1 -

opportunity to use the phone because he was required to report to the prison infirmary for insulin injections during the only hour those opportunities were available. (Dkt. 78-3 at 8). Plaintiff asserted that he was forced to be in the infirmary and forfeit the other "services and privileges[] because the facility [had] no procedures in effect for those who have medical priorities at the time of one hour recreation. . . ." (*Id.*). Defendant investigated Plaintiff's grievance and reported that Plaintiff had other opportunities to use the showers and phones. (*Id.* at 13). Based on Defendant's investigation, Plaintiff's grievance was denied. (*Id.* at 10). The New York Department of Correctional Services Central Office Review Committee ("CORC") upheld the denial on appeal. (*Id.* at 5).

Later, Plaintiff became aware that another inmate, Michael Bennett ("Bennett"), filed a substantially similar grievance. (Dkt. 80 at 3). The outcome of Bennett's grievance—number EL36-155-09, filed on August, 20, 2009—was different than Plaintiff's. In response to Bennett's grievance, Elmira changed its policy to "ensure that inmates who are eligible for one hour of recreation will be seen first by medical staff to allow them to participate in recreation." (*Id.* at 14). Plaintiff asserts that the differing outcome is because Plaintiff is "black" and Bennett is not. (Dkt. 49 at 13).

Plaintiff admits he did not file a grievance relating to Defendant's allegedly discriminatory treatment. (Dkt. 80 at 4 (incorporating the "Facts" section from Defendant's memo of law (Dkt. 78-4 at 2))).

## DISCUSSION

### I.     Standard of Review

Federal Rule of Civil Procedure 56 provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (emphasis in original) (quoting *Matsushita Elec.*, 475 U.S. at 586-87). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

### II.    Exhaustion

Defendant's only argument on summary judgment is that Plaintiff failed to exhaust administrative remedies. (Dkt. 78-4 at 4-5). Pursuant to 42 U.S.C. § 1997e, "[n]o action shall be brought with respect to prison conditions under [§ 1983], or any

other Federal law, by a prisoner confined in any jail, prison, or other correctional facility

until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).

> To satisfy that requirement, prisoners in New York must ordinarily follow a
> three-step [Department of Corrections and Community Supervision]
> grievance process.  The first step in that process is the filing of a grievance
> with the Inmate Grievance Resolution Committee.  Next, the inmate may
> appeal an adverse decision to the prison superintendent.  Finally, the inmate
> may appeal the superintendent's decision to the [CORC].   In general, it is
> only upon completion of all three levels of review that a prisoner may seek
> relief in federal court under § 1983.

*Crenshaw v. Syed*, 686 F. Supp. 2d 234, 236 (W.D.N.Y. 2010) (citations omitted).

Allegations of discrimination can be brought through an expedited grievance process.

N.Y. Comp. Codes R. & Regs. tit. 7, § 701.9; *see, e.g.*, *Smith v. Kelly*, 985 F. Supp. 2d

275, 281 (N.D.N.Y. 2013).  "Exhaustion is mandatory—unexhausted claims may not be

pursued in federal court." *Amador v. Andrews*, 655 F.3d 89, 96 (2d Cir. 2011).

"[D]efendants bear the burden of proof and prisoner plaintiffs need not plead

exhaustion with particularity." *McCoy v. Goord*, 255 F. Supp. 2d 233, 248 (S.D.N.Y.

2003).  Pursuant to the Second Circuit's decision in *Hemphill v. New York*, 380 F.3d 680

(2d Cir. 2004), a failure to exhaust administrative remedies may be excused where: "(1)

the administrative remedies were not in fact available; [or] (2) prison officials have

forfeited, or are estopped from raising, the affirmative defense of non-exhaustion; or (3)

'special circumstances justify the prisoner's failure to comply with administrative

procedural requirements.'" *Dabney v. Pegano*, 604 F. App'x 1, 3 (2d Cir. 2015) (quoting

*Hemphill*, 380 F.3d at 686).  However, the third prong of *Hemphill*, relating to "special

circumstances" was abrogated by the Supreme Court's decision in *Ross v. Blake*, 136 S.

- 4 -

Ct. 1850 (2016). *Williams v. Corr. Officer Priatno*, 829 F.3d 118, 123 (2d Cir. 2016). Any inquiry which previously would have been considered under the third prong of *Hemphill*, is now considered "entirely within the context of whether administrative remedies were actually available to the aggrieved inmate." *Id.*

*Ross* provides three circumstances in which administrative remedies are unavailable: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates;" (2) when the grievance system is "so opaque that it becomes, practically speaking, incapable of use;" and (3) "when prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross*, 136 S. Ct. at 1859-60. However, the *Ross* list of circumstances "do[es] not appear to be exhaustive. . . ." *Williams*, 829 F.3d at 123 n.2.

Plaintiff concedes that he has not exhausted administrative remedies vis-à-vis his discrimination claim. (Dkt. 80 at 6-7). Plaintiff argues that administrative remedies were unavailable because he did not become aware of the discrimination until "'years' after the fact. . . ." (*Id.* at 7). Whether the regulations provide a procedural route to administrative relief is an objective question. *Rodriguez v. Reppert*, 14-CV-671-RJA-MJR, 2016 WL 6993383, at *2 (W.D.N.Y. Nov. 30, 2016) ("[T]he question, according to [*Williams*], is whether 'the regulations contemplate the situation in which the prisoner finds himself.' This is an objective question: the regulations either provide the inmate with a procedural route to obtain administrative relief, or they do not." (internal citation omitted)). Although a grievance generally must be filed within 21 days of the incident giving rise to

the complaint, N.Y. Comp. Codes R. & Regs. tit. 7, § 701.5(a)(1), the grievance regulations provide that a grievance program supervisor may allow a complaint more than 21 days after the date of the incident. *Id.* § 701.6(g). However, the supervisor may not grant an exception "if the request was made more than 45 days after an alleged occurrence." *Id.* § 701.6(g)(1)(i)(*a*); *see, e.g., Shaw v. Ortiz*, Case No. 15-CV-8964 (KMK), 2016 WL 7410722, at *2 (S.D.N.Y. Dec. 21, 2016) ("[A]n inmate must first file a complaint at the facility where the inmate is housed within 21 calendar days of an alleged occurrence . . . but no exception will be granted if the request was made more than 45 days after the alleged occurrence."). An inmate may file an additional grievance, complaining that the supervisor failed to provide an exception, but the regulations do not allow for any extension of the 45-day filing deadline. *Williams*, 829 F.3d at 125-26 ("[E]ven though [the regulation] suggests that an inmate could file a separate complaint grieving the denial of an exception to the filing deadline, such a grievance would be futile given that the regulations do not give the [grievance program] supervisor authority to grant an exception beyond 45 days of the initial incident.").

Here, Plaintiff claims that he did not learn of the discrimination until "years" after the discrimination occurred; Defendant offers no evidence to suggest otherwise. Defendant completed his investigation on March 11, 2008. (Dkt. 78-3 at 13). Bennett did not file his grievance until nearly a year-and-a-half later, on August 20, 2009. Elmira's policy change allowing diabetic inmates to receive the medical care they needed and also to participate in recreation was announced on October 6, 2009. (*Id.* at 16).

- 6 -

The grievance regulations prohibit, without exception, the filing of a grievance complaint more than 45 days after the alleged incident.   Plaintiff could not have discovered the different response—and thereby the alleged discrimination in the outcome of his own grievance—within 45 days of Defendant's investigation and report.  The 45-day requirement procedurally barred Plaintiff from receiving administrative relief.  Such a bar operates as a "dead end," and administrative remedies were unavailable to Plaintiff.  *See Ross*, 136 S. Ct. at 1859; *Williams*, 829 F.3d at 125-26; *see also Borges v. Piatkowski*, 337 F. Supp. 2d 424, 427 (W.D.N.Y. 2004) (finding, pursuant to the special circumstances prong of *Hemphill*, that administrative remedies were unavailable where the plaintiff was unaware of the violative conduct until well after the time allowed for filing a grievance lapsed).

Even if the regulations technically allowed Plaintiff to file a grievance in this situation, the regulations were so opaque that remedies were unavailable and exhaustion is excused.  The Second Circuit's decision in *Williams* is instructive.  In that case, the prisoner plaintiff attempted to file a grievance, while in the special housing unit, by handing his grievance to a corrections officer, as contemplated by the grievance procedures.  *Williams*, 829 F.3d at 120-21.  The officer never filed the grievance and the plaintiff never received a response to his grievance.  *Id.* at 121.  The plaintiff was then transferred to another facility.  *Id.*  The defendants argued that the regulations technically provided the plaintiff a mechanism for appealing a grievance even if no timely response was provided, and after he had been transferred.  *Id.* at 124.

The *Williams* court found that administrative remedies were unavailable. In essence, to exhaust his administrative remedies the regulations required the plaintiff to file a separate complaint, grieving the correctional officer's failure to file the original grievance. *Id.* Such a requirement was "'so opaque' and 'so confusing that no reasonable prisoner could use it.'" *Id.* at 124 (quoting *Ross*, 136 S. Ct. at 1859). The Circuit pointed out that "[t]he regulations simply do not contemplate the situation in which [the plaintiff] found himself, making it practically impossible for him to ascertain whether and how he could pursue his grievance." *Id.*

The same is true here. As noted above, the regulations do not provide for Plaintiff's situation. But even if they could be read as providing an answer, the situation in which Plaintiff finds himself places "time limitations and procedural hurdles that in all but the rarest of circumstances would preclude him from pursuing his [grievance], and that are, in any event, 'so confusing that no reasonable prisoner can use them.'" *Id.* at 125 (quoting *Ross*, 136 S. Ct. at 1859).

The regulations, as applied to Plaintiff's situation, are an explicit bar on administrative relief under *Ross*'s "dead end" prong, and they are also "so opaque" as to make an administrative remedy unavailable. Thus, Plaintiff was not required to exhaust administrative remedies under § 1997e, and summary judgment must be denied.

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment (Dkt. 78) is denied.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: March 8, 2017
       Rochester, New York