UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES DISTRICT COURT
FILED
SEP 1 0 2019
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

———————————————————————

SHAWN GREEN,

      Plaintiff,

    v.

SERGEANT SCHMELZLE,

      Defendant.

———————————————————————

**DECISION AND ORDER**

6:11-CV-06063 EAW

## INTRODUCTION

Plaintiff Shawn Green ("Plaintiff"), proceeding *pro se*, commenced this action on February 7, 2011, alleging various constitutional violations arising out of his incarceration at the Elmira Correctional Facility ("Elmira"). (Dkt. 1). The only remaining claim in this case is a claim for violation of equal protection brought against Sergeant Schmelzle ("Defendant") based on allegations that he conducted a biased investigation related to Plaintiff's grievance about an alleged conflict between the diabetes clinic and recreation time. (Dkt. 44; Dkt. 49 at 13; Dkt. 65 at 12). Presently before the Court is Defendant's motion for summary judgment (Dkt. 119) and Plaintiff's motion to amend the complaint (Dkt. 125). For the following reasons, Plaintiff's motion to amend is denied, and Defendant's motion for summary judgment is granted.

## BACKGROUND

The following facts are drawn from Defendant's Statement of Material Facts (Dkt. 119-1), Plaintiff's memorandum in opposition to the motion for summary judgment (Dkt.

123), and the underlying documents. The Court has noted where factual disputes exist and views all such disputes in the light most favorable to Plaintiff.

Plaintiff, who is African American, has suffered from diabetes since 2003 and began receiving insulin shots after his transfer to Elmira in February 2008. (Dkt. 119-1 at ¶ 3; Dkt. 119-3 at 64). On or about March 1, 2008, Plaintiff filed a grievance about a scheduling conflict between recreation time (*i.e.*, time that Plaintiff could shower, exercise, and make phone calls) and the time he received his afternoon insulin injection. (Dkt. 119-1 at ¶ 4; Dkt. 119-3 at 110). Plaintiff alleges that he was "a diabetic who must report to the facility infirmary everyday around 3:00 p.m. for insulin injections during the time on days when I'm scheduled for the only recreation I'll receive such day." (Dkt. 119-1 at ¶ 4; Dkt. 119-3 at 110). On March 8, 2008, Defendant interviewed a nurse about the timing of the insulin injections. (Dkt. 119-3 at 115). Defendant met with Plaintiff on March 9, 2008, to discuss his grievance. (Dkt. 119-1 at ¶ 5). Plaintiff has no recollection of the meeting. (*Id.* at ¶ 7).

On March 11, 2008, Defendant submitted a memorandum detailing his findings regarding Plaintiff's grievance. (Dkt. 119-3 at 115). He found that "[a]s of the date the grievance was written, there were only two days from the first of March to the eleventh of March that may be an issue," and that "[i]t is in my opinion that [Plaintiff] simply wants the convenience of showering and using the phone on the block." (*Id.*). On March 27, 2008, the Inmate Grievance Resolution Committee ("IGRC") issued a finding based on the information in Defendant's memorandum that "all inmates are entitled ample access to recreation, showers, phone use and exercise" and recommended "[i]f it is feasible . . . that the administration look into the possibility of diabetic inmates using the showers and phone

in the block on the days they have 1-hr recreation in the Fieldhouse." (*Id.* at 111). Plaintiff appealed the IGRC's finding on March 27, 2008. (*Id.*). On April 3, 2008, Superintendent Bradt ("Bradt") denied Plaintiff's appeal because the "[i]nvestigation by [Defendant] revealed that the grievant is afforded ample time to attend rec. when requested. Medical staff supports this conclusion." (*Id.* at 112). Plaintiff appealed Bradt's decision to the Central Office Review Committee ("CORC") on April 10, 2008. (*Id.*). On May 14, 2008, the CORC upheld Bradt's determination "for the reasons stated," noting that Plaintiff "receives access to showers and phones consistent with facility recreation procedures. CORC upholds the discretion of the facility administration to promulgate recreation procedures." (*Id.* at 107).

Thereafter, on August 20, 2009, another diabetic inmate named Michael Bennett, who is Caucasian, filed a grievance (the "Bennett Grievance")[1] about denial of his access to recreation due to his insulin shots. (*Id.* at 148). He claimed that for two years he had been prescribed medical showers for days where he could not make it to recreation due to his insulin injections, but that his medical showers were revoked on August 15, 2009. (*Id.* at 151). He further claimed that his diabetes made him susceptible to infection in his feet, "especially with water run-off from other inmates," and that medical showers mitigated that risk. (*Id.*). Bennett then requested the reinstatement of his medical showers. (*Id.*). The Bennett Grievance was investigated by Sergeant Horton ("Horton"), who told Bennett

---

[1]    As discussed in more detail later in this Decision and Order, the authenticity of the Bennett Grievance and some related documents is disputed. The Court includes the alleged contents here for context.

that he "would not be able to have a special escort take him to the 1 hour rec after his insulin because of staffing issues," but that "arrangements will be made so that Inmate Bennett can receive a shower and his insulin." (*Id.* at 150). On September 24, 2009, the IGRC recommended that "clarification as to what specific steps are to be taken . . . is needed."

On October 6, 2009, Lieutenant Sullivan issued a new policy regarding all diabetic inmates "in an attempt to have the inmates at the infirmary completed and sent back so they are able to catch the 1 hour recreation run." (*Id.* at 152). On October 8, 2009, Bradt issued a decision on Bennett's appeal, finding that "grievant is indeed denied a shower due to security reasons," accepting the grievance "to the extent that remedial steps will be taken to correct the situation," and describing the new policy issued by Lieutenant Sullivan. (*Id.* at 153). Bennett appealed Bradt's decision to the CORC, which upheld Bradt's decision and advised Bennett "to address medical shower requests via the sick call mechanism." (*Id.* at 147). Again, Bennett is Caucasian, and Plaintiff is African American. (Dkt. 119-1 at ¶ 18). Plaintiff transferred out of Elmira in December 2010 (*id.* at 64), and returned in 2015 (*id.* at 53).

Plaintiff filed the instant lawsuit on February 7, 2011. (Dkt. 1). On June 19, 2012, Plaintiff filed an amended complaint (Dkt. 41), and on December 26, 2012, Plaintiff filed the operative pleading in this matter, the Second Amended Complaint (Dkt. 44). On September 26, 2014, a motion for summary judgment was filed by the 25 then-named defendants. (Dkt. 47). Plaintiff filed his opposition to the motion for summary judgment on October 31, 2014, where he alleged for the first time that his equal protection rights had

- 4 -

been violated because the Bennett Grievance was handled differently from his. (Dkt. 49 at 13). The Bennett Grievance was not attached to Plaintiff's opposition.

The case was transferred to the undersigned on December 4, 2014. (Dkt. 50). Plaintiff filed a cross-motion for summary judgment on February 11, 2015. (Dkt. 51). On December 23, 2015, the Court granted in part and denied in part the defendants' motion for summary judgment, and denied Plaintiff's cross-motion for summary judgment. (Dkt. 65). The only claim not dismissed was the equal protection claim alleged against Defendant, based on the additional factual allegations contained in Plaintiff's opposition papers about the Bennett Grievance.[2] (*Id.* at 12). The allegations in the operative pleading at that time did not support the inference that any other defendant was personally involved in the alleged discriminatory conduct. On January 11, 2016, Defendant filed his Answer to the Second Amended Complaint. (Dkt. 66). On April 7, 2016, Defendant filed a motion for summary judgment claiming that Plaintiff failed to exhaust his administrative remedies (Dkt. 78), which the Court denied on March 8, 2017 (Dkt. 84).

Discovery closed on August 17, 2018. (Dkt. 111). On October 19, 2018, Defendant filed the instant motion for summary judgment. (Dkt. 119). On December 6, 2018,

---

[2] Plaintiff's opposition alleged "[i]n contrast to Schmelzle['s] wholly opinioned grievance investigation report prepared for Plaintiff[], whose [sic] black," that "Michael Bennett a diabetic also filed similar to Plaintiff[], a grievance about 3:00 clinic interference with recreation that [led] to the issuance of [Sullivan]'s October 6, 2009 memorandum[.]" (Dkt. 49 at 13). The Bennett Grievance was not attached to Plaintiff's opposition papers or to the Second Amended Complaint (Dkt. 44), so the Court did not examine the alleged contents of the Bennett Grievance when it issued its December 23, 2015, Decision and Order (Dkt. 65). Additionally, as discussed elsewhere in this Decision and Order, the authenticity of these documents has been called into question.

Plaintiff filed a memorandum in opposition to the motion for summary judgment (Dkt. 123), and the motion to amend the complaint presently before the Court (Dkt. 125). Defendant submitted a declaration in opposition to the motion to amend on December 18, 2018 (Dkt. 127), which Plaintiff replied to on January 2, 2019 (Dkt. 128).

## DISCUSSION

### I.   Motion to Amend

Plaintiff seeks to amend his complaint to allege thirteen claims against thirteen additional defendants. (Dkt. 125-1). Plaintiff contends the new claims he asserts relate to the events surrounding the handling of Plaintiff's grievance and the purported Bennett Grievance. (Dkt. 125). For the following reasons, the Court denies Plaintiff leave to file the proposed third amended complaint.

#### A.   Legal Standard

Federal Rule of Civil Procedure 15 provides that the Court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). Nevertheless, "it is within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007). "A district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Id.* "[C]onsiderations of undue delay, bad faith, and prejudice to the opposing party are touchstones of a district court's discretionary authority to deny leave to amend." *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir. 1998) (quotation and original alteration omitted); *see Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 553

(2010) ("[A] court may consider a movant's 'undue delay' or 'dilatory motive' in deciding whether to grant leave to amend under Rule 15(a).").

## B. Undue Delay and Prejudice

"The court plainly has discretion . . . to deny leave to amend where the motion is made after an inordinate delay, no satisfactory explanation is offered for the delay, and the amendment would prejudice the defendant." *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990). The Second Circuit considers "the prejudice to the opposing party resulting from a proposed amendment as among the most important reasons to deny leave to amend." *AEP Energy Servs. Gas Holding Co. v. Bank of Am., N.A.*, 626 F.3d 699, 725 (2d Cir. 2010). While delay "absent a showing of bad faith or undue prejudice, does not provide a basis for a district court to deny the right to amend," the Second Circuit has held that "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (quotations omitted).

Plaintiff's motion for leave to amend was unduly delayed. Plaintiff filed the instant action on February 7, 2011 (Dkt. 1), and his second amended complaint, the operative pleading, was filed on December 26, 2012 (Dkt. 44). The Court dismissed the majority of Plaintiff's claims on December 23, 2015. (Dkt. 65). On August 17, 2018, discovery closed (Dkt. 111), and Defendant filed his motion for summary judgment on October 19, 2018 (Dkt. 119). The instant motion to amend was not filed until December 6, 2018, nearly eight years after the action commenced, almost three years after Plaintiff's claims were initially dismissed, and after the close of discovery and the filing of Defendant's summary judgment

motion. (Dkt. 125). Plaintiff has provided no reason or justification for the motion's late filing date.

Prejudice would result to both Defendant and the proposed defendants if the Court were to grant Plaintiff leave to amend. "In determining what constitutes prejudice, we generally consider whether the assertion of the new claim or defense would (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; [or] (ii) significantly delay the resolution of the dispute[.]" *Monahan v. N.Y.C. Dep't of Corr.*, 214 F.3d 275, 284 (2d Cir. 2000). Additionally, a court may find prejudice where "many documents have been destroyed or are otherwise unavailable." *Grace v. Rosenstock*, 169 F.R.D. 473, 482 n.5 (E.D.N.Y. 1996), *aff'd*, 228 F.3d 40 (2d Cir. 2000). "When a delay in bringing the motion to amend poses a risk of prejudice, '[t]he burden is on the party who wishes to amend to provide a satisfactory explanation for the delay.'" *Beare v. Millington*, No. 07-CV-3391 (TLM), 2014 WL 12833989, at *2 (E.D.N.Y. Feb. 24, 2014) (quoting *Cresswell v. Sullivan & Cromwell*, 922 F.2d 60, 72 (2d Cir. 1990) (affirming the district court's denial of a motion to amend the complaint when it was brought more than 17 months after the suit was commenced, more than six months after plaintiffs filed their second amended complaint, and more than one month after plaintiffs had responded to defendants' motion for summary judgment and when the only proffered reason for the delay was plaintiffs' ignorance of a specific statute)).

The claims in the proposed Third Amended Complaint are based on the allegedly different treatment of the Bennett Grievance from Plaintiff's grievance. Plaintiff claims that although both his grievance and the Bennett Grievance raised the issue of diabetic

inmates not being able to participate in recreation activities if they went to get their insulin shots, prison officials only changed the policy in response to the Bennett Grievance, not to Plaintiff's grievance. (Dkt. 125-1 at 2-4). The first time Plaintiff raised this argument was on October 31, 2014, in opposition papers to a previous motion for summary judgment. (*See* Dkt. 49 at 13). However, Plaintiff has been aware of the Bennett Grievance since at least July 2011. (*See* Dkt. 33 at 71)).[3] On December 23, 2015, the Court found Plaintiff's equal protection allegations regarding the Bennett Grievance were sufficient as to Defendant, but dismissed the claim as to all the other defendants because "[t]he allegations in the Second Amended Complaint do not support the inference that any other defendant was personally involved in the alleged discriminatory conduct." (Dkt. 65 at 12).

Plaintiff's proposed amendments would prejudice the defendants previously dismissed from this lawsuit because they were not on notice of the pending claim.[4]

---

[3]    Plaintiff included the Bennett grievance among 126 pages of documents attached to his opposition to a motion to dismiss dated July 28, 2011. (Dkt. 33 at 70-74). In that opposition, Plaintiff cited to the Bennett Grievance to bolster his allegation that it was unconstitutional for the recreation schedule to conflict with medicine administration, arguing that other diabetics had also complained about the issue. (*See id.* at 10). He did not refer to the Bennett Grievance as the basis for a class of one equal protection claim at that time, nor did he allege that Bennett had been treated more favorably than he had. The first time Plaintiff made any reference to an equal protection-based claim related to the Bennett Grievance was October 31, 2014, when Plaintiff raised the issue in opposition to a summary judgment motion. (Dkt. 49 at 13).

[4]    Similarly, the defendants proposed by Plaintiff not previously named in the lawsuit would clearly be prejudiced if the Court allowed amendment due to lack of notice at this stage of the litigation. *See White v. Verizon*, No. 5:06-CV-0617 (GTS/GHL), 2009 WL 3335897, at *3 (N.D.N.Y. Oct. 15, 2009) ("[P]ermitting Plaintiff to bring a new defendant into this action at this late stage of the litigation, after discovery of this action has been completed and Defendant has filed a motion for summary judgment . . . would result in undue prejudice to the proposed new defendant.").

Plaintiff's opposition filed in October 2014 alleged "[i]n contrast to Schmelzle['s] wholly opinionated grievance investigation report prepared for Plaintiff[], whose [sic] black," that "non-black" diabetic inmate Bennett "also filed similar to Plaintiff[], a grievance about 3:00 clinic interference with recreation that [led] to the issuance of Lieutenant Sullivan['s] October 6, 2009 memorandum[.]" (Dkt. 49 at 13). The only names mentioned in this section of Plaintiff's opposition, besides Bennett's and Defendant's, are Sullivan and Horton, neither of whom were parties to the lawsuit. (*See id.* at 13-14; Dkt. 1; Dkt. 44). Additionally, the Bennett Grievance and related documents were not attached to Plaintiff's opposition papers or to the Second Amended Complaint, so even the then-named defendants could not have had notice that Plaintiff was potentially raising an equal protection claim based on the Bennett Grievance against them. *See Tiffany (NJ) Inc. v. eBay, Inc.*, 576 F. Supp. 2d 460, 461-62 (S.D.N.Y. 2007) (denying leave to amend complaint where the original complaint "did not adequately put [the defendant] on notice" of the proposed claims); *see also Moore v. Sam's Club, a Div. of Wal-Mart Stores, Inc.*, 55 F. Supp. 2d 177, 189 (S.D.N.Y. 1999) ("The longer an unexplained delay in putting a defendant on notice of a particular claim, the less prejudice a defendant must demonstrate in order to successfully dismiss the claim." (citing *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993))). This lack of notice is further supported by the Court's December 23, 2015, Decision and Order holding the only claim that could proceed was the equal protection claim alleged against Defendant, and that "[t]he allegations in the Second

Amended Complaint do not support the inference that any other defendant was personally involved in the alleged discriminatory conduct." (Dkt. 65 at 12).[5]

Moreover, Defendant's inability to obtain an official or authenticated copy of the Bennett Grievance or other related documents is prejudicial. After becoming aware the Bennett Grievance was the basis for Plaintiff's class of one equal protection claim, counsel for Defendant requested a copy of the Bennett Grievance and the related records from Elmira, but was advised that the records no longer existed pursuant to Elmira's document retention policy. (Dkt. 119-3 at ¶¶ 3-4). Counsel for Defendant was able to obtain a copy of a Central Office Review Committee decision on the Bennett Grievance (*id.* at ¶ 5), but the decision does not include a copy of the Bennett Grievance, nor does it discuss the substance of the Bennett Grievance in any detail (*see id.* at 5). At that time, Defendant obtained alleged copies of the Bennett Grievance from Plaintiff during discovery. (*See* Dkt. 119-3 at 49-50). Defendant additionally obtained alleged copies of the following documents from Plaintiff at his deposition taken on August 3, 2018: (1) the IGRC recommendation regarding the Bennett Grievance; (2) the memorandum from Sergeant Horton dated August 18, 2009; (3) the policy issued by Lieutenant Sullivan on October 6,

---

[5]    The destruction of these documents, as well as other documents from 2008 and 2009, is the subject of Plaintiff's motion for sanctions also pending before this Court. (Dkt. 131). While the motion for sanctions will be mooted as a result of this Decision and Order, the Court does not find the accusations therein dispositive for reasons similar to those articulated in the prejudice discussion—namely that the "obligation to preserve evidence arises when the party has notice that the evidence is relevant to litigation," *Kronisch v. United States*, 150 F.3d 112, 126 (2d Cir. 1998), and Defendant had no such notice here.

2009; and (4) the decision by Bennett. Defendant attached these documents to the instant motion for summary judgment. (*See id.* at 149-53).

Plaintiff has conceded that he does not know how he came into possession of the Bennett Grievance (*see* Dkt. 119-3 at 47-48), nor could Defendant's counsel obtain copies of most of the relevant documents from DOCCS (*id.* at ¶¶ 3-4). The record shows that Defendant's counsel also contacted DOCCS to see if it could confirm the document submitted by Plaintiff was the Bennett Grievance, which it could not, and that Defendant's counsel attempted to contact Mr. Bennett to see if he could verify the authenticity of the document, but never received a response. (Dkt. 123 at 8). Without authenticated records, the proposed defendants cannot verify that the documents submitted by Plaintiff are unaltered. *See CSX Transp., Inc. v. Emjay Envtl. Recycling, Ltd.*, No. CV 12-1865 (JS) (AKT), 2013 WL 12329546, at *5 (E.D.N.Y. Sept. 18, 2013) (finding defendant would suffer prejudice if leave to amend complaint was granted because defendant's records pertaining to the proposed amendment had been destroyed, and because "[t]he Court does not see how [the plaintiff]'s offer to produce its own documents can cure the loss/destruction of [the defendant]'s documents"). The inability to verify the accuracy of the documents is especially prejudicial here where Plaintiff's claims entirely rely on the contents of the Bennett Grievance. *Cf. United States v. Gross*, 165 F. Supp. 2d 372, 381 (E.D.N.Y. 2001) (finding that defendants had suffered actual prejudice where documents were missing and substantial evidence was offered to establish the role that the missing documents would have played in defendants' case).

Additionally, as previously discussed, Plaintiff has provided no explanation as to why he did not seek to amend the complaint earlier or include the allegations regarding the Bennett Grievance in the Second Amended Complaint even though he possessed the documents upon which his additional claims were based at the time the Second Amended Complaint was filed. *See Morency v. NYU Hosps. Ctr.*, 728 F. App'x 75, 76-77 (2d Cir. 2018) (affirming the district court's decision to deny leave to amend because "[u]nder the circumstances, where nearly all of the relevant facts giving rise to [the plaintiff]'s potential . . . claim were or should have been peculiarly within [the plaintiff]'s possession, [the plaintiff] failed to provide a satisfactory explanation for her nearly 13-month delay in seeking amendment" (quotation omitted)).

Moreover, Plaintiff filed the motion to amend after discovery closed and after Defendant filed his summary judgment motion (Dkt. 111 (discovery closed August 17, 2018); Dkt. 119 (Defendant's motion for summary judgment filed October 19, 2018); Dkt. 125 (Plaintiff's motion to amend filed December 6, 2018)), and it is well settled that motions to amend after the close of discovery and the filing of a motion for summary judgment are generally prejudicial to both current and proposed defendants. *See, e.g.*, *Werking v. Andrews*, 526 F. App'x 94, 96 (2d Cir. 2013) ("We are particularly likely to find prejudice where the parties have already completed discovery and the defendant has moved for summary judgment."); *Ansam Assocs., Inc. v. Cola Petroleum, Ltd.*, 760 F.2d 442, 446 (2d Cir. 1985) ("[P]ermitting the proposed amendment would have been especially prejudicial given the fact that discovery had already been completed and [the defendant] had already filed a motion for summary judgment.").

Accordingly, the Court finds Plaintiff unduly delayed the filing of the motion to amend, and that allowing Plaintiff to further amend the Second Amended Complaint would prejudice Defendant and the proposed defendants.

### C. Futility

Even if allowing Plaintiff to further amend his complaint would cause no prejudice, it would be futile. When a motion for leave to amend is filed in response to a motion for summary judgment, "and the parties have fully briefed the issue whether the proposed amended complaint could raise a genuine issue of fact and have presented all relevant evidence in support of their positions," the Second Circuit has explained:

> [E]ven if the amended complaint would state a valid claim on its face, the court may deny the amendment as futile when the evidence in support of the plaintiff's proposed new claim creates no triable issue of fact and the defendant would be entitled to judgment as a matter of law under Fed. R. Civ. P. 56(c).

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001). In other words, under those circumstances, the summary judgment standard applies when evaluating the merits of the proposed amendment.

In the instant matter, Plaintiff filed the motion to amend in response to Defendant's summary judgment motion, and Plaintiff takes the position that "no additional evidence or discovery [is] needed other than that already requested." (Dkt. 128 at 1). Additionally, Defendant contends that the evidence related to Plaintiff's proposed claims "would be difficult to obtain, as evidenced by the inability to get documents related to the summary judgment currently before the Court." (Dkt. 127 at 3). Therefore, the Court finds it

appropriate to use the summary judgment standard in evaluating the futility of Plaintiff's motion to amend.

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris*, 550 U.S. 372, 380 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)).

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact[.]" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014). "Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial." *Johnson v. Xerox Corp.*, 838 F. Supp. 2d 99, 103 (W.D.N.Y. 2011) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)). Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)). Specifically, the non-moving party "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Brown*, 654

F.3d at 358. Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The proposed Third Amended Complaint alleges thirteen claims, all of which are futile. As a preliminary matter, Plaintiff's first proposed cause of action for "Hobson's Choice" (Dkt. 125-1 at 5) is not a valid cause of action. The remaining proposed causes of action rise and fall with Plaintiff's equal protection claims, which the Court finds are also futile.

Plaintiff alleges a class of one discrimination claim that, based on Elmira's handling of the Bennett Grievance, Plaintiff was treated differently than other diabetic prisoners. "A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Analytical Diagnostic Labs, Inc. v. Kusel*, 626 F.3d 135, 140 (2d Cir. 2010) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). The Second Circuit has explained:

> [T]o succeed on a class-of-one claim, a plaintiff must establish that: (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake.

*Id.* (quotation omitted).

Viewing the record in the light most favorable to Plaintiff, a rational trier of fact could not find that any differential treatment of the Bennett Grievance was without rational basis. As a preliminary matter, Plaintiff would not be able to admit the Bennett Grievance into evidence at trial. *See Nora Beverages, Inc. v. Perrier Grp. Of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."). The Federal Rules of Evidence require the proponent of an item of evidence to "produce evidence sufficient to support a finding that the item is what the proponent claims it is." Fed. R. Evid. 901(a). In this case, as discussed above, Plaintiff has conceded that he does not know where he obtained the Bennett Grievance and related records (*see* Dkt. 119-3 at 47-48), nor could Defendant's counsel obtain copies of most of the relevant documents from DOCCS (Dkt. 119-3 at ¶¶ 3-4). The record shows that Defendant's counsel was unable to verify the authenticity of the Bennett Grievance with either DOCCS or Mr. Bennett. (Dkt. 123 at 8). Plaintiff "provides no basis for the Court to conclude he has personal knowledge and can verify the item is what it is claimed to be."[6] *PA Realty Grp., LLC v. Hornbeck*, No. 3:16-cv-00630-VLB, 2017 WL 4169409, at *6 (D. Conn. Sept. 19, 2017). Under these circumstances, Plaintiff would be unable to admit the Bennett Grievance into evidence at trial.

---

[6]     For similar reasons, the Bennett Grievance is also inadmissible hearsay not subject to the business records exception or any other exception. *See United States v. Bonomolo*, 566 F. App'x 71, 73 (2d Cir. 2014) ("The 'principal precondition to admission of documents as business records ... is that the records have sufficient indicia of trustworthiness to be considered reliable.'" (quoting *Saks Int'l., Inc. v. M/V Export Champion*, 817 F.2d 1011, 1013 (2d Cir. 1987))).

Moreover, if the Bennett Grievance was admissible, Plaintiff's class of one equal protection claim would still fail. "[A]n equal protection claim requires evidence that the defendants singled out the plaintiff for such treatment among others whom they had no legitimate interest in treating differently." *Pappas v. Town of Enfield*, 602 F. App'x 35, 36-37 (2d Cir. 2015). The record does not support Plaintiff's contention that he was singled out and treated differently than Bennett. To the contrary, the record before the Court shows that Plaintiff and Bennett were treated the same. Bennett's request for special access to block showers was denied, and he was advised "to address medical shower requests via the sick call mechanism." (Dkt. 119-3 at 147). Ultimately though, in response to the Bennett Grievance, a policy went into effect regarding <u>all</u> diabetic inmates impacted by the conflict between recreation and receiving an insulin injection, including Plaintiff and Bennett. (*See id.* at 152-53). In other words, no special treatment was afforded Bennett—rather, the entire policy was ultimately revised so as to benefit Bennett, Plaintiff, and all diabetic inmates.

Moreover, the timing of the grievances does not support Plaintiff's assertion that he was treated differently. Plaintiff filed his grievance in 2008 (*id.* at 110) while Bennett filed his grievance in 2009 (*id.* at 148), and it does not make sense that the proposed defendants singled out Plaintiff when compared to Bennett when there is no evidence that they knew Bennett would file a grievance one year later. The Court is also not persuaded that the issuance of the policy after the Bennett Grievance instead of after Plaintiff's grievance is evidence of differential treatment. It is perfectly legitimate for a policy to change after receiving multiple complaints instead of just one, and there is no evidence of record that

demonstrates Plaintiff's grievance was denied for the express purpose of treating him differently. To the contrary, denying Plaintiff's grievance meant he received the same treatment as all the other diabetic inmates who went to get insulin shots at 3:00 p.m.

Plaintiff has further failed to "show an extremely high degree of similarity" between himself and Bennett, as is required to support a class of one equal protection claim. *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010). In the purported Bennett Grievance, Bennett stated that for two years he was given the opportunity to take medical showers on the block because he was required to receive an insulin injection at 3:00 p.m., and accordingly was unable to make it to 3:00 p.m. recreation to take a shower. (Dkt. 119-3 at 151). Bennett further stated that his medical showers were rescinded, and that his diabetes made him susceptible to infection in his feet, "especially with water run-off from other inmates." (*Id.*). He then asked that his medical showers be reinstated. (*Id.*). By contrast, Plaintiff's grievance merely stated that the insulin injection time forces him "to be in the infirmary and forfeit[]" his opportunity to take a shower, use the phone, or exercise. (*Id.* at 110). Plaintiff was not assigned medical showers, nor did he state that he would be more susceptible to infection without block showers. A rational person could find that a different outcome was justified where one grievance raises a medical issue and the other does not.

Additionally, Plaintiff's claim for general discrimination pursuant to the equal protection clause, as opposed to class of one discrimination, also fails. "In order to establish an equal protection violation, [a plaintiff] must show that [he was] treated differently than other people in similar circumstances and must establish that such unequal

treatment was the result of intentional and purposeful discrimination." *Tatta v. Wright*,

616 F. Supp. 2d 308, 319 (N.D.N.Y. 2007) (quotation omitted). "Where disability

discrimination is at issue, the Fourteenth Amendment only proscribes government conduct

for which there is no rational relationship between the disparity of treatment and some

legitimate governmental purpose." *Garcia v. State Univ. of N.Y. Health Scis. Ctr. of

Brooklyn*, 280 F.3d 98, 109 (2d Cir. 2001).[7]

Plaintiff has failed to show that the policies in place had no rational relationship to

a legitimate governmental purpose. The record does not show that the policies were

implemented with the intention of injuring diabetic inmates.[8] Instead, the record before

the Court shows diabetic inmates had insulin administered from 3:00 p.m. to 4:00 p.m.

pursuant to medical policy (Dkt. 119-3 at 117), and all inmates could not attend recreation

if they were not ready by a certain time for security reasons (*id.* at 153). The policy about

timely attendance for recreation applied to all prisoners, not just diabetic inmates. (*Id.*).

Additionally, meeting the medical needs of prisoners and the security needs of the prison

---

[7]     Although the proposed third amended complaint does not indicate that Plaintiff intends to allege a race-based equal protection claim as opposed to a disability-based equal protection claim, even if it did, the record before the Court presents no indication of race-based discrimination as is discussed later in this Decision and Order.

[8]     For this reason, Plaintiff's proposed Americans with Disabilities Act ("ADA") claims are also futile. To successfully bring a claim under Title II of the ADA, a plaintiff must establish that he "is being excluded from participation in, or being denied the benefits of some service, program, or activity by reasons of his or her disability," and that his "mistreatment 'was motivated by either discriminatory animus or ill will due to disability.'" *Elbert v. N.Y. State Dep't of Corr. Servs.*, 751 F. Supp. 2d 590, 594-95 (S.D.N.Y. 2010) (quoting *Garcia*, 280 F.3d at 112).

are both legitimate government purposes.[9] *See, e.g., Jova v. Smith*, 346 F. App'x 741, 744 (2d Cir. 2009) ("[T]he district court's determination that all of the practices challenged by the Appellants promote the Defendants' legitimate penological interests in maintaining institutional safety, security, and order[.]"); *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 404 (S.D.N.Y. June 3, 2005) ("[T]he Eighth Amendment prohibition against cruel and unusual punishment requires that prison officials provide 'humane conditions of confinement' including 'adequate . . . medical care.'" (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994))).

Even if Elmira's policy regarding recreation did infringe on the rights of the diabetic inmates, "[t]he state may infringe upon a prisoner's constitutional rights so long as the infringing regulation or policy is 'reasonably related to legitimate penological interests.'" *Pabon v. Wright*, 459 F.3d 241, 252 (2d Cir. 2006) (quoting *Washington v. Harper*, 494 U.S. 210, 223 (1990)). It is well established that institutional security is a legitimate penological interest. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) ("The limitations on the exercise of constitutional rights arise both from the fact of incarceration and from valid penological objectives—including . . . institutional security."); *Gilmore-Bey v. Coughlin*, 929 F. Supp. 146, 153 (S.D.N.Y. 1996) ("Plaintiff's claim that the . . . policies adopted by DOCS violate his right to equal protection is . . .

---

[9]     Plaintiff appears to concede the necessity of such policies. In his request for relief, he did not ask that he be allowed to attend recreation on days when he received his afternoon insulin shot or that the timing of the insulin shot administration be moved. (Dkt. 119-3 at 11). Additionally, Plaintiff stated in a sworn affidavit that "it[']s imperative that I report to the facility infirmary daily at 7 a.m., 3 p.m., and 8 p.m. for insulin medication/treatment." (Dkt. 123 at 13).

without merit. These policies are reasonably related to legitimate penological interests in being able to manage the correctional facilities effectively while maintaining security."). Because the policy of not allowing inmates to go to recreation late is related to institutional security concerns, it is reasonably related to a legitimate penological interest.

The remainder of Plaintiff's proposed claims, *i.e.*, conspiracy, supervisory liability, and failure to train, all rely on a finding that Plaintiff's equal protection rights were violated. Because the Court has found that Plaintiff's proposed equal protection claims are futile, the Court also finds that Plaintiff's remaining proposed claims are futile.

In sum, the Court concludes, for the reasons set forth above, that Plaintiff has unduly delayed in seeking to amend, and that his proposed amendments are futile in any event. Accordingly, the Court denies Plaintiff's motion for leave to amend.

## II.     **Motion for Summary Judgment**

Defendant has moved for summary judgment as to the equal protection claim pending against him. Summary judgment is appropriate as to this claim for the reasons discussed above, and for several additional reasons.

Plaintiff alleges that Schmelzle's investigation into his grievance violated his rights under the Equal Protection Clause because it was racially biased. (Dkt. 49 at 13; Dkt. 65 at 12). He bases his accusation on the different handling of the Bennett Grievance and the fact that Bennett is Caucasian while Plaintiff is African American. (Dkt. 49 at 13; Dkt. 65 at 12). Although for the reasons discussed above the Court finds the Bennett Grievance would be inadmissible at trial and therefore should not be considered on a motion for

summary judgment, even if the Court could consider the Bennett Grievance, summary judgment would still be appropriate.

To establish an equal protection claim, Plaintiff must demonstrate that "(1) he was treated differently from similarly situated individuals and (2) that the difference in or discriminatory treatment was based on 'impermissible considerations such as race[.]'" *Trowell v. Theodarakis*, No. 3:18-CV-446 (MPS), 2018 WL 3233140, at *3 (D. Conn. July 2, 2018) (quoting *Diesel v. Town of Lewisboro*, 232 F.3d 92, 103 (2d Cir. 2000)). While the record before the Court shows that Schmelzle investigated and handled Plaintiff's grievance (Dkt. 119-3 at 115), it does not show that Schmelzle handled the Bennett Grievance or any other grievance related to the ability of diabetic inmates to attend recreation (*see id.* at 150 (Sergeant Horton memorandum regarding Bennett Grievance)), let alone handled them differently. Additionally, Schmelzle's memorandum regarding Plaintiff's grievance does not contain any reference to race or any other basis for discrimination (*id.* at 115), and Plaintiff stated he does not remember the meeting he had with Schmelzle or what was discussed[10] (*id.* at 34-35); *see McClenton v. Menifee*, No. 05 Civ. 2844(JGK), 2009 WL 195764, at *5 (S.D.N.Y. Jan. 12, 2009) (granting summary

---

[10]     The Court also notes even if Schmelzle's handling of the grievance was otherwise improper, "the law is clear that plaintiff has no constitutional right to have his grievances processed at all, or if processed, to have the procedure done properly." *Avent v. Doe*, No. 9:05-CV-1311 (FJS/GJD), 2008 WL 877176, at *8 (N.D.N.Y. Mar. 31, 2008) (citing *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 342 (S.D.N.Y. 2003) (collecting cases)); *see Green v. Herbert*, 677 F. Supp. 2d 633, 639 (W.D.N.Y. 2010) (holding inmate's claims that officer assigned to investigate his grievance conducted a biased, unfair investigation "fails because an inmate has no constitutional right to have his grievances processed or investigated in any particular manner").

judgment in favor of defendants because plaintiff "has not offered any evidence beyond mere speculation" that defendant "took any of the alleged actions toward the plaintiff because of a racially discriminatory reason"). Moreover, as discussed above, the record does not establish that Bennett was treated differently from Plaintiff because the policies implemented impacted all diabetic inmates the same. (Dkt. 119-3 at 152). Nor is Bennett similarly situated to Plaintiff because the Bennett Grievance addressed medical issues (*id.* at 151) whereas Plaintiff's grievance did not (*id.* at 110). Accordingly, no rational trier of fact could determine that Schmelzle violated Plaintiff's equal protection rights.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion to amend (Dkt. 125) is denied, and Defendant's motion for summary judgment (Dkt. 119) is granted. The Clerk of Court is directed to enter judgment in favor of Defendant and close this case.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: September 10, 2019
      Rochester, New York